UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARK A. PETERSON

    Plaintiff,

vs.                                                  Case No. 8:08-cv-1043-T-MCR

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on April 7, 2004, alleging an inability to work since September 29, 2003. (Tr. 15). The Social Security Administration ("SSA") denied this application initially and upon reconsideration. (Tr. 36, 41). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on January 22, 2007. (Tr. 45, 200). On August 31, 2007, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 15-

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 22).

1

26).  Because the Appeals Council denied Plaintiff's request for review on April 9, 2008, the ALJ's decision on April 4, 2008 was the final decision of the Commissioner.  (Tr. 5-8).  Plaintiff timely filed his Complaint before this Court on May 28, 2008.  (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claimed to be disabled since September 29, 2003, due to bipolar disorder, nervous breakdowns, depression, anxiety, and a chemical imbalance.  (Tr. 56).

### B. Summary of Evidence Before the ALJ

Plaintiff was forty-eight years of age on the date of his hearing before the ALJ.  (Tr. 204).  Plaintiff had past relevant work as a tile setter, caregiver/manager at a group home, and an auto parts delivery driver.  (Tr. 24).  Plaintiff graduated high school and completed some college.  (Tr. 210).

Plaintiff completed disability reports in May 2004 and January 2005.  (Tr. 55-64, 82-88).  In May 2004, Plaintiff claimed his ability to work was limited because he was depressed, very anxious, and unable to handle stress.  (Tr. 56)  In January 2005, when asked whether there had been any change in his conditions since his last disability report, Plaintiff noted he had more frequent anxiety, was agitated easily, and was taking stronger medication.  (Tr. 82).  Further, Plaintiff alleged he had no energy mentally or physically.  Id.

Plaintiff began seeing his treating psychiatrist, Dr. Carlos Borge, M.D. ("Dr. Borge"), regarding anxiety on November 17, 1999.  (Tr. 490).  On that visit, Dr. Borge's

2

notes were largely unremarkable; however, he discussed with Plaintiff the presence of Generalized Anxiety Disorder. (Tr. 490). Plaintiff then saw Dr. Borge approximately every other month thereafter until July 2002. (Tr. 472-89). In a January 24, 2001 progress note, Dr. Borge wrote the following regarding Plaintiff's mental status:

> The patient appears stated age. He is well oriented in all spheres. Regarding level of consciousness, he appears alert. Affect is appropriate. Mood is depressed. He presented himself in a neatly dressed and well-groomed fashion. Eye contact can be described as good. His speech is logical, coherent, and goal-directed. Recent memory appears unimpaired. Remote memory is not impaired. Psychomotor activity can be characterized by normal movements and activity level. There is a negligible degree of conceptual disorganization evident. His thought content is characterized by no significant preoccupations. Regarding perceptual functioning, the patient denies hallucinations and none are evident. Attitude can be described as cooperative and interested. As far as insight is concerned, the patient verbalizes awareness of problems and sees consequences. Judgment is good. Attention/concentration is characterized by an ability to attend and maintain focus. Regarding impulse control the patient is reflective and able to resist urges.

(Tr. 480). Thereafter, on February 26, 2001; May 15, 2001; August 13, 2001; September 11, 2001; January 3, 2002; April 2, 2002; May 9, 2002; July 2, 2002; September 24, 2003; and March 23, 2004, Dr. Borge recorded the same entry each visit alternating only whether Plaintiff's mood was depressed, euthymic, or anxious. (Tr. 472-480, 185-187).

On April 19, 2004, Dr. Borge wrote a letter indicating Plaintiff would "need to remain on active treatment for the foreseeable future" and was "not capable of maintaining a level of functioning appropriate enough and consistent enough in order to be gainfully employed." (Tr. 184). Subsequently, between July 2004 to September

2005, Dr. Borge noted Plaintiff's mental status the same as set out in full on the previous page of this Order on six different occasions. (Tr. 171-74, 176-181). On September 12, 2005, Dr. Borge wrote another letter nearly identical to that of April 2004; however, Dr. Borge noted in September 2005 that he recommended to Plaintiff vocational or career counseling. (Tr. 196).

On June 30, 2006, Dr. Borge's notes once again contained the paragraph previously set out in this Order with one change indicating Plaintiff's thought content was characterized by "preoccupation with the persistence of anxious component which [was] consistent with the impact left by most recent adversary events." (Tr. 193). On November 2, 2006, however, Dr. Borge again recorded the same paragraph but without the change. (Tr. 109). On November 21, 2006, Dr. Borge wrote an identical letter to that of April 19, 2004, again stating Plaintiff could not work. (Tr. 189).

On July 8, 2004, Plaintiff was consultatively examined by Dr. Jan S. Harmon, Psy.D. ("Dr. Harmon"). (131-132). Dr. Harmon noted Plaintiff was "alert and fully oriented with fully commensurate abilities in attention, concentration, recent memory, verbal reasoning, verbal problem-solving, and expressive/receptive language." (Tr. 131). Dr. Harmon opined that Plaintiff was capable of managing his own financial matters at the time of the examination and assigned Plaintiff a 53 on the Global Assessment of Functioning ("GAF") Scale.[2] (Tr. 132). In July 2004 and January 2005,

---

[2] A GAF score of 51 to 60 equates to moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision (2000) American Psychiatric Association, Washington DC.

Plaintiff's mental residual functional capacity ("MRFC") was evaluated by two non-examining consultants. (Tr. 147-49, 151-53). The July 2004 MRFC evaluation indicated Plaintiff had moderate limitations in his ability to: (1) perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances; (2) complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) interact appropriately with the general public; and (4) respond appropriately to changes in the work setting. (Tr. 147-48). The January 2005 MRFC indicated Plaintiff had moderate limitations in his ability to maintain attention and concentration for extended periods as well as complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 151-52). Both consultants noted affective and anxiety related disorders. (Tr. 133, 157).

On January 22, 2007, Plaintiff testified before the ALJ. (Tr. 200-236). Plaintiff stated he was hospitalized in November 1999 after a complete breakdown. (Tr. 206). He testified he currently did only limited, basic things like empty the dishwasher and that his wife managed the money. (Tr. 214-15). Further, Plaintiff alleged he was sick in bed for about fourteen or fifteen hours a day. (Tr. 219). Plaintiff denied any limitations in his ability to walk, sit, stand, lift, carry, bend, or twist. (Tr. 210).

### C. **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff last met the nondisability requirements of the Social Security Act on December 31, 2005 and was insured for benefits through that date. (Tr. 17). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Id. At step two, the ALJ determined Plaintiff's severe combination of impairments included bipolar disorder, depression, and an anxiety disorder. (Tr. 19). At step three, the ALJ concluded Plaintiff's severe impairments did not meet or equal any of the listings in 20 C.F.R. Part

6

404, Subpart P, Appendix 1. (Tr. 19).

The ALJ then determined Plaintiff retained the RFC for all exertional activity. (Tr. 20). However, the ALJ also concluded Plaintiff would be "limited to performing basic work-related activities that involve routine, repetitive tasks requiring only one to two step instructions for completion in standardized situations." Id. Further, Plaintiff would "require a work setting with limited interpersonal responsibilities and/or demands." Id. In determining Plaintiff's RFC, the ALJ first considered Plaintiff's testimony and the medical evidence of record to conclude that Plaintiffs statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 21).

In considering medical opinion evidence, the ALJ first briefly examined the opinion of the consultative psychological examiner, Dr. Harmon. (Tr. 21). The ALJ then discussed Dr. Borge's opinion at length and determined Dr. Borge's three opinion letters were not consistent with his own treatment notes. (Tr. 23-24). The ALJ pointed out that Dr. Borge's treatment notes were the exact same for many months, yet his opinion letters stated something completely different. (Tr. 23). After noting that those inconsistencies rendered Dr. Borge's opinions "less than persuasive," the ALJ discussed the opinions of two state agency consultants. Id. While acknowledging that normally opinions of non-examining consultants did not warrant significant weight, the ALJ stated the consultants' opinions were "more persuasive and consistent with the record as a whole than the records of Dr. Borge." Id. The ALJ afforded Plaintiff "a more reduced capability in the type of mental task he was capable of performing" than the consultants directed; however, the ALJ's RFC determination was otherwise consistent

with the consultants' RFC determinations. (Tr. 24).

At step four, the ALJ utilized the testimony of a vocational expert (the "VE") during the hearing to determine whether Plaintiff could perform any of his past relevant work. (Tr. 24). The VE testified Plaintiff's past relevant work activity required an ability to perform mental work-related tasks greater than the RFC outlined by the ALJ. Id. Thus, the ALJ found Plaintiff unable to perform any past relevant work. Id. At step five, the ALJ determined there were jobs that existed in significant numbers in the national economy Plaintiff could perform. Id. The VE testified that considering Plaintiff's age, education, work experience, and RFC, Plaintiff would be able to perform three different jobs. (Tr. 25). Thus, the ALJ determined Plaintiff was not disabled. (Tr. 26).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff argues two interrelated issues on appeal. First, Plaintiff asserts the ALJ erred in failing to give proper weight to the diagnoses and opinions of Plaintiff's treating physician. (Doc. 14, pp. 13-16). Second, Plaintiff claims the ALJ erred in relying on the opinions of non-examining consultants. (Doc. 14, p. 16). The Commissioner argues substantial evidence supports the ALJ's decision to give less weight to the opinion of Plaintiff's treating physician. Additionally, the Commissioner contends the ALJ properly considered the opinions of the non-examining consultants. (Doc. 18, pp. 4-16). The Court will examine these claims together.

**Whether the ALJ erred in assigning minimal weight to Plaintiff's treating physician and increased weight to the non-examining consultants.**

Plaintiff first argues the ALJ erred in failing to give proper weight to Plaintiff's treating physician, Dr. Borge. (Doc. 14, p. 16). Plaintiff is correct that the opinion of a treating physician "'must be given substantial or considerable weight unless 'good

9

cause' is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2003) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "'Good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241 (quoting Lewis, 125 F.3d at 1440). Additionally, the ALJ must clearly articulate his/her reasons for disregarding the opinion of a treating physician. Id.

This Court finds substantial evidence supports the ALJ's decision to accord little weight to the opinion of Dr. Borge. In the instant case, the ALJ considered all the evidence of record and determined Dr. Borge's opinion was "less than persuasive." (Tr. 23). After noting Plaintiff's mental status evaluations were consistently unremarkable, the ALJ compared them with Dr. Borge's letters stating Plaintiff was "incapable of maintaining a level of functioning appropriate enough and consistent enough to be gainfully employed." (Tr. 22-23). Specifically, the ALJ pointed out Plaintiff "was noted to experience good symptom control, showed only a negligible degree of conceptual disorganization, and vocational counseling had been recommended." (Tr. 23). Also, the ALJ noted "Dr. Borge opined that [Plaintiff] may experience some exacerbation of anxiety from time to time, but overall, [Plaintiff] handled it well." Id. The ALJ cautioned it was possible, based on the inconsistencies between the evaluations and letters, that Dr. Borge was attempting to assist Plaintiff to avoid unnecessary doctor/patient tension. Id.

Thus, the ALJ stated that "the opinions submitted by Dr. Borge on September 12th and November 21st, revealed major inconsistencies when compared with

10

[Plaintiff's] ongoing treatment needs, thereby rendering Dr. Borge's opinions less than persuasive." Id. As such, the ALJ articulated sufficient reasons to conclude Dr. Borge's opinions were "conclusory or inconsistent with the [his] own medical records" and the ALJ had the requisite "good cause" to give minimal weight to Dr. Borge's opinions. Phillips, 357 F.3d at 1241. Accordingly, this Court finds substantial evidence supported the ALJ's decision to give less weight to the opinions of Dr. Borge.

Plaintiff also argues the ALJ erred in applying significant weight to the opinions of the non-examining consultants. (Doc. 14, p. 16). Specifically, Plaintiff argues that opinions of reviewing, non-examining consultants, when contrary to those of examining physicians, are entitled to little weight. (Doc 14, p. 16) (citing Ortega v. Chater, 933 F. Supp. 1071, 1074 (S.D. Fla. 1996)). In this case, however, the opinions of the non-examining consultants were consistent with the opinion of the examining consultant, Dr. Harmon.

Plaintiff also appears to argue that an ALJ can never reject the opinion of a treating physician in favor of a non-examining, reviewing physician. To support this claim, Plaintiff cites Bruet v. Barnhart, 313 F. Supp. 2d 1338 (M.D. Fla. 2004). However, this case and the others cited by Plaintiff for support are distinguishable from the instant case. In each case Plaintiff cites for support, the ALJ either rejected the opinion of a treating physician without the requisite "good cause" or used a non-examining consultant's opinion alone in making an RFC determination. See Swindle v. Sullivan, 914 F.2d 222 (11th Cir. 1990); Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090 (11th Cir. 1985); Ortega, 933 F. Supp. 1071; Bruet, 313 F. Supp. 2d 1338. However, in the instant case, the ALJ properly found the "good cause" necessary to

give little weight to the opinion of the treating physician. Only after finding Dr. Borge's opinion letters were inconsistent with his own findings did the ALJ allocate increased weight to the non-examining consultants' opinions. Because the ALJ properly discredited Dr. Borge's opinion, he did not err in giving increased weight to the opinions of the non-examining consultants. Childs v. Astrue, 2009 WL 902614 *5, n.5 (M.D. Ala. March 31, 2009) (noting that "[b]ecause the ALJ properly discredited [the treating physician's] opinion, he did not err by relying on the contrary opinions of the non-examining psychologists") (citing Milner v. Barnhart, 275 Fed. Appx. 947 (11th Cir. 2008)).

Additionally, the ALJ in the instant case did not make his RFC determination based on the non-examining consultants' opinions alone. The ALJ considered the non-examining consultants' opinions along with the treatment notes of Dr. Borge and the opinion of Dr. Harmon. (Tr. 21-24). Also, the ALJ afforded Plaintiff a more reduced RFC in the type of mental tasks he was capable of performing than the non-examining consultants. (Tr. 23-24). Thus, while the opinion of a non-examining consultant taken alone "does not constitute substantial evidence to support an administrative decision," the ALJ in the instant case considered other evidence in addition to the opinions of the non-examining physicians. Therefore, the ALJ properly considered the evidence and substantial evidence supported her findings.

In sum, substantial evidence and "good cause" supported the ALJ's decision to give reduced weight to Dr. Borge's opinions. Additionally, because the ALJ had "good cause" to give less weight to the opinions of Dr. Borge and because the non-examining doctors' opinions were consistent with Dr. Harmon, the examining consultant,

12

substantial evidence supported the ALJ's decision to increase the weight committed to the non-consulting physicians in conjunction with the remainder of the evidence in the record.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence. Accordingly, the Clerk of the Court is directed to enter judgment **AFFIRMING** the Commissioner's decision and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  2nd  day of July, 2009.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record